**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ALETA BRADY, an individual | ) | |
| | ) | No. 38449-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WHITEWATER CREEK, INC., a foreign | ) | PUBLISHED OPINION |
| corporation; SUMMIT RIDGE, LLC, a | ) | |
| Washington corporation, | ) | |
| | ) | |
| Respondents. | ) | |

STAAB, J. — Whitewater Creek, Inc. managed the Summit Ridge Apartments. Whitewater received a written tenant complaint that a man was observed attempting to access an upper-floor apartment balcony by scaling the exterior of the building. Two weeks later, Aleta Brady, a tenant at Summit Ridge, was raped in her apartment by a neighbor assailant. She believed he accessed her third-floor balcony and entered her apartment through the unlocked slider door. She sued Whitewater for failing to protect her from the risk that persons could access the upper-level balcony. Whitewater moved for summary judgment on the theory that it did not owe Brady a duty, and Brady could not produce evidence of breach or causation. Prior to granting Whitewater's summary

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

judgment motion, the trial court struck the untimely declaration of Brady's expert witness.

Procedurally, we find that the trial court abused its discretion in failing to conduct a *Burnet*[1] analysis on the record before striking the relevant declaration.

On the substantive issues, we reject Brady's contention that Whitewater had a special relationship with her attacker that required Whitewater to trespass or evict him. However, we hold that because Whitewater had a special relationship with Brady; it had a duty to protect her from the foreseeable criminal conduct of a third person. Whitewater's knowledge that a person was recently seen attempting to access an upper-level balcony at night was sufficient to create a duty for Whitewater to protect Brady from the foreseeable risk of someone accessing her upper-floor balcony. Additionally, sufficient evidence exists in the record to create a factual issue as to whether Whitewater breached its duty and whether the breach caused Brady's injuries. We therefore reverse and remand.

BACKGROUND

Because this issue was decided on summary judgment, the following facts are set forth in a light most favorable to the nonmoving party, Brady.

---

[1] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

Summit Ridge Apartments are owned by Summit Ridge, LLC, and managed by Whitewater Creek, LLC. Maryann Prescott is the president of Whitewater. Whitewater constructed the Summit Ridge apartment complex and began accepting new tenants in 2015. The apartment complex consists of 6 buildings and a total of 120 apartments.

There is evidence in the record that Whitewater took steps to keep its tenants safe with regard to the security of the apartments. The tenant apartments had deadbolts and door-handle locks on the primary front doors. All the windows had locks. The apartment sliding-glass doors to the balconies had a switch-type lock on the door handle that could only be locked from the inside.

Casie Waholi handled leasing during the first six months after construction. She testified that Whitewater ran background checks for rental credit and criminal history on prospective tenants. At the time of this incident, most misdemeanors within three years and any felonies within seven years disqualified a potential tenant. A current tenant could be evicted if they were subsequently convicted of qualifying offenses, including sexual abuse, drug dealing, and charges involving guns.

Whitewater maintains incident reports, tenant complaint forms, and maintenance work forms for the property managers, maintenance personnel, and tenants to fill out in the office. If Whitewater became aware of criminal or suspicious activity, the policy was to provide tenants with safety notices in writing that are posted to the front door of every tenants apartment. Whitewater "rarely [has] major criminal issues that create tenant

3

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

dissatisfaction." When an incident occurs on the property, Whitewater would follow up by requesting a copy of the police report to check for any criminal arrest and would contact the police department to check on any convictions.

Under Whitewater's lease provisions, all persons living in a unit must be on the lease so tenants could be screened. When investigating unauthorized guests, Whitewater would speak to the tenant to confirm the guest and would send several notices to the tenant before turning the issue over to counsel. Under the lease, Whitewater could evict a tenant for lease violations but was not required to do so.

The plaintiff, Brady, lived in a third-floor apartment at Summit Ridge. The apartment had a balcony that was only accessible from inside the apartment. LaJuane Roberson was an unregistered tenant, living in an apartment on the other side of the common stairwell, which was to the left of Brady's apartment. Roberson is an 18-year-old male with a light build, standing 5'10" tall. He was described as fit, athletic and could climb through the window of his apartment. There is evidence in the record that Roberson was living at Summit Ridge from November 2015 until October 2016.

Although it is not clear if Whitewater knew of Roberson specifically, the company had received information that unauthorized guests were staying in the apartment on the other side of the common stairwell, which was to the left of Brady's apartment, for more than 14 days. In April and May 2016, Whitewater served four notices of violation on the

4

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

tenants living in the apartment for unauthorized guests staying more than 14 days. The record does not indicate what action was taken in response to these notices.

In April 2016, Brady witnessed Roberson in a physical altercation with a young female in the complex's parking lot. Brady called 911 to report that Roberson was assaulting the female, but there is no evidence that Roberson was charged with a crime for this incident. Brady filed a tenant complaint form in the manager's office. As she completed the form and verbally described what she witnessed, an employee told her to be quiet because the "neighbor" she reported had just walked in. Several days later, the maintenance worker asked Brady if Roberson was the person she saw in the parking lot. Brady responded yes. Roberson denied assaulting a female.

Several months later, another tenant at Summit Ridge, Olga Yurkova, witnessed a balcony trespass incident. While on her balcony at 4:00 a.m. she heard a noise and saw a male climbing the stairwell roof. He was trying to get into a second-floor balcony belonging to her neighbor. He was "dangling" and about to roll himself onto the balcony. He was "kind of pushing himself, but using his legs from the wall that he can roll over to the balcony." Clerk's Papers (CP) at 93. She also described the incident as "kinda like in a movie, he's ninja, and pushing himself by the feet" and getting his arms over the railing to pull up by the armpits. CP at 183. She asked the trespasser what he was doing, and he said he lived there. She told him that he did not. He then got back on the roof. She said without a doubt that had she not yelled at him, he would have been able to get up on the

5

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

balcony. She got scared and went back into her apartment and locked the door. She does not know how he left. She only saw him from the back and he was wearing a hoodie.

In the morning, Yurkova called the police to report the incident. The police report for the incident indicated that the man was skinny, blonde, and white, but Yurkova denied telling the police that he was blonde.

The following Monday, Yurkova and her neighbor reported the incident to the apartment manager at Summit Ridge. Yurkova filled out a complaint form: "I went on the balcony Saturday morning at 4:30 am. I saw a guy on the roof above the stairs and trying to climing [sic] to my neighbor balcony. I said him something and scared him so he run away." CP at 98. The form indicates that it will be part of Summit Ridge's records after submission and that should follow-up be required, they would contact Yurkova shortly.

Right after Yurkova's complaint, the maintenance person at Summit Ridge spoke to Yurkova and reported back to the president, Maryann Prescott. Prescott testified that they did not find any evidence to corroborate Yurkova's claim and did not believe that someone had attempted to access the balcony as she described.

Nevertheless, Prescott claims maintenance was instructed to go door to door and provide wooden dowels to tenants who were home and wanted one. While Prescott testified that all tenants were offered dowels for their sliding doors, she had no first-hand knowledge that this occurred, and the maintenance person was unavailable to testify.

6

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

Whitewater did not keep records as to which tenants were notified or accepted a dowel. There is no evidence that the other tenants were told about the balcony incident. Yurkova later testified that the "apartment complex did nothing to make the apartment's more safe" and she "had to make her own door block and add a stick on alarm to her slider." CP at 184.

Two weeks after the Yurkova incident, an intruder raped Brady in her apartment in the middle of the night. She believed the intruder entered her apartment through the sliding glass door on her balcony. Brady remembered locking her front door before going to bed and specifically remembered unlocking the front door for the police who arrived after the rape. But she did not lock the sliding door because she did not believe someone could scale the building and get to the balcony. Brady testified that if she had been told about the Yurkova balcony trespass incident prior to her assault, she would have locked the sliding door.

LaJuane Roberson was eventually charged and found guilty by a jury of first degree rape, first degree burglary with sexual motivation for the attack, and tampering with a witness.

After the assault, Whitewater put up flyers all over the complex warning tenants to lock doors and windows even if they lived up high. The flyer indicated "a couple disturbances in the area." It urged tenants to keep sliders locked, acknowledging that

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

"[t]he most common misconception for apartment living is that if you live on an upper floor you are safe from intrusions." CP at 206.[2]

Brady filed a personal injury suit against Whitewater Creek, Inc., and Summit Ridge, LLC, alleging that they breached their duty to her as an invitee tenant by failing to prevent the unreasonable danger of exterior access to balconies or warn tenants of the same.

Whitewater moved for summary judgment, arguing it owed no duty to protect Brady from the unforeseeable act of sexual assault by a third person, and Brady could not prove breach or causation. Whitewater conceded that tenant invitees are owed a duty of protection from hazards in common areas under *Restatement (Second) of Torts* § 315 (Am. L. Inst. 1965), but claimed that the sexual assault of Brady was not foreseeable. Whitewater specifically asserted that Brady could not prove that Whitewater knew of the danger because sexual assault and other similar violent criminal activity had not previously occurred on the property.

Whitewater also argued that Brady did not have evidence of causation. Whitewater reasoned that Brady's theory of how Roberson accessed her balcony was based on speculation, not direct evidence. Whitewater pointed to Prescott's deposition,

---

[2] While Whitewater suggests that several pieces of evidence submitted by Brady were inadmissible under the evidence rules, the evidence had not been struck from the record and was available to the trial court. *See* Br. of Resp't at 15.

8

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

where she testified that Brady's third-floor balcony is 45 to 60 feet up and accessing it from outside would be unlikely and dangerous.

One week before the scheduled summary judgment hearing, Brady filed and served the declaration of Russell Kolins in support of her response. The declaration established Kolins' qualifications as a security consultant with 52 years of experience in private practice. He conducted a site inspection of the Summit Ridge Apartment complex. He took measurements and photographs of the complex, including Brady's apartment, Yurkova's apartment, and the relevant balconies and stairwells. While much of his declaration contains legal conclusions, he dedicates a section to his observations and opinions. Specifically, Kolins testified:

> Based on my site inspection of the Summit Ridge Apartments conducted on March 15, 2021, in my professional opinion, it was foreseeable that an individual could climb from the stairwell roof onto the second floor balcony and then climb onto the third floor balcony of the Summit Ridge Apartments. Records indicate that Roberson was 5'9" tall, slender build and "incredibly strong." . . . I observed the following from my site inspection:
> a. Distance between the edge of the second floor balcony railing from the roof is approximately 5'4". The horizontal distance from the front edge of the roof to the balcony was 24". Mr. Roberson's height was documented to be 5'9", not including his reach which according to this writer's height (5"9') [sic] my sleeve length is 34' [sic] and hand length 8", Mr. Roberson and anyone of similar size would be able to extend in excess of that distance, not including however far he would be able to stretch.

9

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

    b.  The distance from the second floor railing to the top of the third floor railing measured 65' which is 4" less than the height of Mr. Roberson, thus making it easy for the athletic rapist to access the Brady balcony.

CP at 319.

Whitewater moved to strike the declaration as untimely. Brady opposed the motion to strike, advising the court that Kolins could not sign his declaration any sooner due to his participation in a Florida trial, and that attorneys were not available to produce it sooner due to trial conflicts, vacations, and COVID-19 difficulties. Kolins' deposition was scheduled one day before the summary judgment hearing.

The trial court granted both the motion to strike Russell Kolins' declaration and Whitewater Creek and Summit Ridge's motion for summary judgment after taking both issues under advisement on August 27, 2021. The order to strike indicates that it was granted for "good cause." Brady timely appealed.

## ANALYSIS

1.    TRIAL COURT'S DECISION TO STRIKE UNTIMELY DECLARATION

In its summary judgment motion, Whitewater alleged that Brady could not produce evidence to create a material issue of fact on the element of causation. Five days before the summary judgment hearing, Brady submitted the declaration of Russell Kolins. On appeal, Brady assigns error to the trial court's decision to strike the untimely

10

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

declaration[3] and argues that it abused its discretion by failing to conduct a *Burnet* analysis before striking the declaration. Whitewater responds that Brady was required to move for a continuance before the *Burnet* factors became relevant. In the alternative, Whitewater contends the trial court conducted the analysis, and the declaration was properly struck. We agree that the court abused its discretion by failing to consider the *Burnet* factors on the record before striking Kolins' declaration.

"Before we can consider the evidence in this case, however, we need to determine what evidence is before us." *Keck v. Collins*, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015). When we review a summary judgment order, we must consider all evidence in favor of the nonmoving party. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). Admissible expert testimony on an ultimate issue of fact may be sufficient to create a dispute of material fact precluding summary judgment. *N.L. v. Bethel Sch. Dist.*, 187 Wn. App. 460, 468, 348 P.3d 1237 (2015).

This issue is clearly controlled by the Supreme Court's decision in *Keck*. There, the court held that a *Burnet* analysis is "appropriate when the trial court excludes untimely evidence submitted in response to a summary judgment motion." 189 Wn.2d at 369. The three *Burnett* factors include: "whether a lesser sanction would probably suffice, whether the violation was willful or deliberate, and whether the violation

---

[3] CR 56(c) requires an adverse party to a motion for summary judgment to file and serve any opposing documentation no later than 11 calendar days before the hearing.

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

substantially prejudiced the opposing party." *Id*. at 369. The *Burnet* analysis promotes the purpose of summary judgment, which is to test the sufficiency of evidence before trial, not to cut litigants off from their right to a jury trial when they have evidence to present. *Id.* at 369.

Relying on our decision in *Boyer v. Morimoto*, 10 Wn. App. 2d 506, 449 P.3d 285 (2019), Whitewater argues that a trial court is not required to apply *Burnet* unless the party submitting the untimely declaration moves for a CR 56(f) continuance. *Boyer* is inapposite because the responding party filed a supplemental declaration after the trial court had issued its memorandum decision on summary judgment and did not urge the trial court to consider the *Burnet* factors or seek a continuance or reconsideration. *Id*. at 536.

Alternatively, Whitewater contends that the trial court did consider the *Burnet* factors when it allowed Brady to argue *Burnet* in response to the motion to strike. While Brady raised *Burnet* in her argument, the court made no findings on the factors or otherwise provided a *Burnet* analysis. In *Keck*, the Supreme Court found that the trial court's commenting on one *Burnet* factor without making findings on the other two factors was an insufficient analysis. 184 Wn.2d at 369. While explicit citation to *Burnet* is not dispositive, some discussion must take place to serve as a foundation for implicit findings. *Jones v. City of Seattle*, 179 Wn.2d 322, 344, 314 P.3d 380 (2013).

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

The trial court failed to make any required findings on the record or in its order. The finding of "good cause" without more is insufficient. *Id*. at 348. We decline to provide the missing analysis on appeal.

Finally, Whitewater argues that any error was harmless because Kolins' declaration lacked foundation, and was conclusory and speculative. *Jones*, 179 Wn.2d at 356 (*Burnet* violations found harmless where the excluded testimony was irrelevant). As we noted above, some of the testimony provided by Kolins was relevant and admissible. Kolins described the physical measurements of the balcony and stairs. The declaration also applied the physical attributes of Roberson to opine that exterior third floor balcony access was not only possible but foreseeable. The exclusion was not harmless.

2.       WHETHER WHITEWATER OWED A DUTY TO PROTECT BRADY FROM THE
         FORESEEABLE CRIMINAL CONDUCT OF THIRD PERSONS

Brady contends that Whitewater owed her a duty to protect her from the risk that someone may access her upper-level balcony. She also contends that based on the allegations of a prior assault and Roberson's status as an unauthorized tenant, Whitewater knew of Roberson's dangerous propensities and had a duty to protect her from Roberson by trespassing or evicting him from the property. Whitewater denies any special relationship existed with Roberson but acknowledges that as a landlord it had a special relationship with its tenant. Nevertheless, Whitewater contends that it did not have a duty to protect her from Roberson's attack because it was not foreseeable.

13

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

We review an order dismissing a complaint on summary judgment de novo, undertaking the same inquiry as the trial court. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Summary judgment is appropriate when the record demonstrates no genuine issue of material fact. *Id*.; CR 56(c). On summary judgment, once a moving party establishes this initial burden, the nonmoving party must rebut the moving party's contentions by setting forth specific facts showing there is a genuine issue for trial. *Seven Gables Corp. v. MGM/UA Entm't Co*., 106 Wn.2d 1, 13, 721 P.2d 1 (1986); CR 56(e).

In order to prove negligence "a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach is a proximate cause of the injury." *Hurley v. Port Blakely Tree Farms L.P*., 182 Wn. App. 753, 773, 332 P.3d 469 (2014) (citing *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). To defeat summary judgment, the nonmoving party must establish an issue of material fact as to each element of negligence. *Martini v. Post*, 178 Wn. App. 153, 164, 313 P.3d 473 (2013). The plaintiff's evidence is sufficient on summary judgment if it leads a reasonable person to conclude that harm, more probably than not, happened in such a way that the defendant should be held liable. *Id*. at 165. Facts and reasonable inferences are made in the light most favorable to the nonmoving party, here, Brady. *Hertog*, 138 Wn.2d at 275.

14

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

In this case, the parties dispute whether Whitewater had a duty to protect Brady. The existence of a duty is determined as a matter of law. *McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752, 762, 344 P.3d 661 (2015). "The general rule at common law is that a private person does not have a duty to protect others from the criminal acts of third parties." *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 223, 802 P.2d 1360 (1991).

As an exception to this rule, "a duty may arise to protect others from third party criminal conduct if a special relationship exists between the defendant, the third party, or the third party's victim." *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 200, 943 P.2d 286 (1997) (citing *Hutchins*, 116 Wn.2d at 227-28). This special relationship arises in two situations:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Restatement* § 315.

Brady contends that both exceptions apply in this case, but in making this argument, she conflates and comingles the separate exceptions. The exception provided under § 315(a) applies only when a special relationship exists between the actor (Whitewater) and the third person (Roberson). As § 315 cmt. c notes, examples of this relationship are set forth in §§ 316-319. They include the relationship between a parent

15

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

and child, employer and employee, possessor of land and their licensee, and one who

takes charge or supervises a person with known dangerous propensities. Our Supreme

Court has also held that a special relationship exists between psychiatrists and their

inpatient and outpatient clients. *Petersen v. State*, 100 Wn.2d 421, 428, 671 P.2d 230

(1983); *Volk v. DeMeerleer*, 187 Wn.2d 241, 262-63, 386 P.3d 254 (2016).

For this exception to apply, Brady must demonstrate "a definite, established, and

continuing relationship exists between the defendant and the third party." *Volk*, 187

Wn.2d at 256. Brady does not attempt to do so and instead, relies on *Restatement* § 318,[4]

which recognizes that a special relationship may exist between a landowner and its

licensee. Brady does not contend that Roberson was Whitewater's licensee. Nor are

there any Washington cases that have applied this exception to find that a residential

landlord has a duty to control its tenant so as to prevent the tenant from committing

criminal acts on another.

---

[4] *Restatement* § 318 states:

If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
   (a) knows or has reason to know that he has the ability to control the third person, and
   (b) knows or should know of the necessity and opportunity for exercising such control.

16

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

Even if we were to consider § 318, finding a duty under these circumstances would be contrary to public policy. The duty recognized in § 318 is imposed on a landowner who knows or has reason to know the need to exercise such control. Brady contends that Whitewater's knowledge of Roberson's involvement in a prior assault, along with actual or constructive knowledge of Roberson's unauthorized tenancy, provided notice of the need to control Roberson. Brady argues that, given this knowledge, Whitewater had a duty to evict or remove Roberson from the property.

From a policy standpoint, if we were to impose a duty upon a landlord to evict a tenant who is suspected–but not convicted–of a misdemeanor assault, it would significantly impact people's ability to obtain and retain housing. It is well established that "'[t]he concept of duty is a reflection of all those considerations of public policy which lead the law to conclude that a plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Volk*, 187 Wn.2d at 263 (quoting *Affiliated FM Ins. Co. v. LTK Consulting Srvs, Inc.*, 170 Wn.2d 442, 450, 243 P.3d 521 (2010)). Under these circumstances, public policy does not favor imposing a duty on a landlord to control its unauthorized tenant by evicting him for one allegation of misdemeanor assault.[5]

Having determined that the first exception in § 315 does not apply, we turn to the second exception. Under § 315(b), a special relationship exists between a business

---

[5] While the landlord may not have a duty to do so, it may nonetheless choose to evict a tenant under these circumstances if otherwise authorized by law.

17

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

(Whitewater) and an invitee (Brady) "because the invitee enters the business premises for the economic benefit of the business." *Nivens*, 133 Wn.2d at 202. Unlike the first exception, the second exception clearly applies to the special relationship between a landlord and tenant. *Griffin v. West RS, Inc.*, 97 Wn. App. 557, 984 P.2d 1070 (1999), *rev'd on other grounds*, 143 Wn.2d 81 (2001). When this special relationship exists, "a business owes a duty to its invitees to protect them from 'reasonably foreseeable' criminal acts of third persons." *McKown*, 182 Wn.2d at 765. However, as we set forth below, this is only a "potential" duty and does not apply to a specific case unless the plaintiff can demonstrate that the specific criminal conduct in this case was foreseeable. *Id.* at 765 n.3 (citing *Nivens*, 133 Wn.2d at 205), 767.

While acknowledging the existence of a special relationship between a landlord and tenant, Whitewater argues that any duty only extends to dangerous conditions in the common areas of the complex. Whitewater reasons that since the special relationship that gives rise to a landlord's liability stems from the landlord's control of the common areas, its only duty is to protect Brady from dangerous or defective conditions in the common area, not inside her apartment. We reject this argument because it is not supported by case law or *Restatements*. Moreover, the stairwell, walls, and roof Roberson allegedly used to access Brady's balcony are considered common areas even if they are not open to the public. *See Griffin*, 97 Wn. App. at 568 (holding that common areas were not limited

18

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

to areas open to the public but included those areas controlled by the landlord, including

the attic space over the apartment).

Washington has adopted a conservative view of a landowner's duty to protect

against the criminal conduct of third persons. *See* 2 DAN B. DOBBS, PAUL T. HAYDEN &

ELLEN M. BUBLICK, THE LAW OF TORTS § 416, at 714 (2d ed. 2011). Under this

approach, a landowner does not have a duty unless "the specific acts in question were

foreseeable rather than whether the landowner should have anticipated any act from a

broad array of possible criminal behavior or from past information from any source that

some unspecified harm is likely." *McKown*, 182 Wn.2d at 767 (citing RESTATEMENT §

344). In other words, even when a special relationship exists, a landowner does not have

a duty to protect against the criminal acts of another unless the landowner has notice. *See*

*Hutchins*, 116 Wn.2d at 226.

While § 315 provides the exception, § 344 defines the contours of this duty.

*McKown*, 182 Wn.2d at 766; *Nivens*, 133 Wn.2d at 202. *Restatement* § 344 provides:

> A possessor of land who holds it open to the public for entry for his
> business purposes is subject to liability to members of the public while they
> are upon the land for such a purpose, for physical harm caused by the
> accidental, negligent, or intentionally harmful acts of third persons or
> animals, and by the failure of the possessor to exercise reasonable care to
> (a) discover that such acts are being done or are likely to be done, or
> (b) give a warning adequate to enable the visitors to avoid the harm, or
> otherwise to protect them against it.

19

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

Under this rule, a business has a duty to protect invitees "from imminent criminal harm and reasonably foreseeable criminal conduct by third persons." *Nivens*, 133 Wn.2d at 205. Here, Brady does not contend that Roberson's conduct was imminent. Instead, she argues that his criminal conduct was foreseeable.

When the question is whether a landowner is liable for the criminal acts of a third person, foreseeability defines the duty as well as the scope of the duty. *McKown*, 182 Wn.2d at 762. "[O]nce 'a duty is found to exist from the defendant to the plaintiff then concepts of foreseeability serve to define the scope of the duty owed.'" *Id.* at 763 (quoting *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 475, 951 P.2d 749 (1998)). On the other hand, if a particular criminal act is not reasonably foreseeable based on the circumstances described in § 344, then it is unnecessary to determine the scope of duty.

The circumstances a court can consider in determining whether a risk was foreseeable are set forth in *Restatement* § 344 cmt. f. The three circumstances that demonstrate when a landowner would have reason to anticipate specific criminal conduct include: past experience, the place of business, or the character of the business. *Id.* at 768. Specifically, the comment provides:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason

20

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

to expect it on the part of any particular individual. *If the place or character of his business, or his past experience*, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

RESTATEMENT § 344 cmt. f. (emphasis added).

When foreseeability is based on a business's past experience, a plaintiff must produce "specific evidence that the defendant knew of the dangerous propensities of the individual assailant or previous acts of similar violence on the premises." *Wilbert v. Metro. Park Dist. of Tacoma*, 90 Wn. App. 304, 310, 950 P.2d 522 (1998). "Where no evidence is presented that the defendant knew of the dangerous propensities of the individual responsible for the crime, and there is no history of such crimes occurring on the premises, the courts have held the criminal conduct unforeseeable as a matter of law." *Id*. at 309.

Brady argues that the term "past experience" is not restricted to previous acts of similar violence. In support of this position, she points out that in *McKown* the Supreme Court held that the foreseeability of criminal acts could be demonstrated through evidence other than prior similar acts. Br. of Appellant at 29 (citing *McKown*, 182 Wn.2d at 771). While this is true, the only other evidence that could establish foreseeability was evidence of the place or character of a business. *McKown*, at 768 (quoting RESTATEMENT § 344 cmt. f.) and 770 n.6. But "where a landowner's obligation

21

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

to protect business invitees from third party criminal conduct arises from past experience, the plaintiff must generally show a history of prior similar incidents on the business premises within the prior experience of the possessor of the land." *Id*. at 774.

Turning to the application of this rule, Brady contends that her evidence is sufficient to show that Roberson's acts were foreseeable. Brady points to three examples as evidence of foreseeability: the place and character of the business, Whitewater's knowledge of Roberson's dangerous propensities, and Yurkova's prior complaint of a person scaling the exterior walls to access an upper-floor balcony. We reject the first two circumstances. However, we find that Whitewater's knowledge of a person recently seen attempting to access an upper-floor balcony was sufficient to put Whitewater on notice and create a foreseeable risk that someone would gain unauthorized access to the upper floor balconies of its apartments.

Brady's first contention is that, given the place and character of the business as an apartment complex, Whitewater knew or should have known that upper-floor apartments were unsafe. Br. of Appellant at 26, 27. However, similar to the plaintiff in *McKown*, Brady fails to define these terms or offer a meaningful framework for evaluating when the place or character of a business would justify imposing a duty. *See McKown*, 182 Wn.2d at 761. Thus, we decline to consider this argument.

Second, Brady argues that Whitewater knew of Roberson's dangerous propensities based on his involvement in a physical altercation in the parking lot five months before

22

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

the rape. We reject this contention as well. As noted above, there is no evidence that Roberson was charged or convicted of this misdemeanor assault. Regardless, the allegation is not sufficiently similar to give notice that Roberson was likely to access an upper-floor balcony five months later.

Finally, we consider whether Yurkova's complaint was a prior similar incident sufficient to put Whitewater on notice that it was likely that someone would try to access upper-floor balconies illegally. In *McKown*, the Court held that when foreseeability is based on past experience, the prior similar acts test requires evidence that the prior conduct was sufficiently similar in nature and location, sufficiently close in time, and sufficiently numerous that a business could anticipate that such a crime will happen again. 182 Wn.2d at 772.

Brady points to two factually similar cases to show that Yurkova's complaint was sufficient to put Whitewater on notice that scaling the exterior walls and roof to access an upper-floor balcony was foreseeable conduct. In *Griffin*, the tenant complained to her landlord after a neighbor broke through the attic crawl space wall between their apartments and entered Griffin's apartment. 97 Wn. App. at 560. The landlord screwed a piece of wood across the crawl space opening but took no further action. *Id.* Two weeks later, the neighbor reentered Griffin's apartment and assaulted her. *Id.* During the police investigation, it was learned that a hole in the sheetrock between the two apartments allowed the neighbor to enter Griffin's apartment through the crawl space

23

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

opening. *Id*. at 561. Under these circumstances, Division One held that the trial court committed reversible error in failing to instruct the jury that the landlord had a duty to protect Griffin from the foreseeable criminal conduct of a third person. *Id.* at 572.

In *Johnson v. State*, a college student alleged that the university failed to warn or protect her from the foreseeable rape by a third person. 77 Wn. App. 934, 894 P.2d 1366 (1995). After rejecting several other theories of liability, the court held that the student was an invitee, and evidence that the university was aware of several crimes on campus that year was sufficient to create a material issue of fact and foreseeability. *Id*. at 943 (cited with approval by *McKown*, 182 Wn.2d at 772).

On the other hand, in *McKown*, the court cited several cases which found that incidents were unforeseeable as a matter of law because they were dissimilar to prior incidents. In *Raider v. Greyhound Lines, Inc.*, the plaintiff was standing in a line at the bus station when a passenger randomly pulled out a gun and shot her multiple times. 94 Wn. App. 816, 818, 975 P.2d 518 (1999). Citing the prior similar incident test recognized in *Wilbert*, the court held that the assailant's actions were unforeseeable as a matter of law. *Id*. at 819-20. Notably, there was no evidence that Greyhound knew of particular dangerous propensities of this passenger. *Id*. at 820. And while there was evidence of prior crimes at the station, the attack on the plaintiff was not sufficiently similar to provide notice sufficient to raise a duty to protect the plaintiff. *Id*. (cited with approval by *McKown*, 182 Wn.2d at 773); *see also Tortes v. King County*, 119 Wn. App.

24

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

1, 6, 84 P.3d 252 (2003) (unforeseeable that passenger would shoot driver of bus when there was no evidence of prior similar crimes on other buses); *Fuentes v. Port of Seattle*, 119 Wn. App. 864, 82 P.3d 1175 (2003) (evidence of prior assault and car prowling was insufficient to establish foreseeability of carjacking).

We hold that *Griffin* and *Johnson* apply to this case. The complaint by Yurkova was sufficient to put Whitewater on notice of the foreseeable risk that someone would gain unauthorized access to upper-floor balconies. Yurkova told Whitewater that she watched a man scaling the exterior wall from the roof and attempting to access the second-floor balcony of her friend during the night. When she said something, the person left the area. Brady contends that her attacker must have accessed her third-floor balcony in the middle of the night and entered her apartment through the unlocked balcony door because her front door remained locked. Brady's expert testified that this was physically possible.

Yurkova's complaint made this conduct foreseeable. Yurkova's complaint was factually similar to Brady's allegation of criminal conduct. While there was only one complaint, it was close in time to Brady's attack. Moreover, Yurkova's complaint pointed out a significant security concern that was not obvious to tenants.

Whitewater characterizes the prior incident as an attempted trespass and contends that it does not establish the foreseeability of the rape. Brady was required to produce evidence of a prior similar act to show that the risk was foreseeable. This requirement is

25

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

different from showing that the harm is foreseeable. The risk is unauthorized access to her balcony. Whether burglary and rape are foreseeable harms from this risk is a question of fact for the jury.

We hold that Yurkova's complaint was a prior similar incident sufficient to put Whitewater on notice and create a duty to protect Brady from the foreseeable risk that someone may gain access to her upper-floor balcony.

3.      WHETHER BRADY PRESENTED SUFFICIENT EVIDENCE OF A BREACH

Whitewater contends on appeal that dismissal of Brady's claims on summary judgment was appropriate because she failed to produce evidence that Whitewater breached any duty. We disagree.

Whitewater had a duty to protect Brady from the risk that someone would gain unauthorized access to her upper-floor balcony. The *Restatements* provide that, at the very least, when this duty exists, the landlord has a duty to "give a warning adequate to enable the [tenant] to avoid the harm." RESTATEMENT § 344(b). If it is reasonable to assume that a warning will not be sufficient, the landlord should use such means of protection as are available or provide the tenant with such means. RESTATEMENT § 344, cmt. d.

While Whitewater claims that it warned all the tenants who were home and provided them with wooden dowels to block their balcony doors, Brady disputes that she

26

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

received a warning or a dowel. Brady's evidence is sufficient to create a genuine issue of material fact on the element of breach.

4.       WHETHER BRADY PRESENTED SUFFICIENT EVIDENCE OF CAUSATION

Finally, Whitewater argues that insufficient evidence supports a causation nexus between the breach of duty and the injury. It contends that even if it breached its duty, the breach was not a proximate cause of Brady's rape because her theory that Roberson entered her apartment by accessing her balcony is speculative and unlikely. Br. of Resp't at 37.

The plaintiff need not prove causation to an absolute certainty. *Gardner v. Seymour*, 27 Wn.2d 802, 808, 180 P.2d 564 (1947). Proximate cause is determined via examination of both "cause in fact" which arises from the nexus between an act and an injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013). Legal causation rests on policy considerations of how far the consequences of a defendant's acts should extend. *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985).

Circumstantial evidence of negligence may be presented as long as it affords room for "'reasonable minds to conclude that there is a greater probability that the conduct relied upon was the [cause in fact] of the injury than there is that it was not.'" *Martini*, 178 Wn. App at 165 (quoting *Hernandez v. W. Farmers Ass'n*, 76 Wn.2d 422, 426, 456 P.2d 1020 (1969)).

No. 38449-7-III
*Brady v. Whitewater Creek, Inc., et al*

Here, there is circumstantial evidence sufficient to create a reasonable inference that Roberson accessed Brady's apartment from the unlocked balcony. Brady testified that her front door remained locked prior to and after the assault, but she had not locked her balcony door. Brady also testified that she would have locked her balcony door had she been warned of the risk that someone was caught attempting to access an upper-level balcony. This evidence is sufficient to create a material issue of fact on the issue of causation.

We reverse the trial court's order dismissing Brady's claims on summary judgment and remand for further proceedings consistent with this opinion.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

28